# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LRN CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARKEL INSURANCE COMPANY and ARCH INSURANCE COMPANY,<br><br>　　　　Defendants. | Civil Action No. 1:20-cv-8431<br><br>**COMPLAINT FOR:**<br><br>1) DECLARATORY JUDGMENT<br>2) BREACH OF CONTRACT<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff LRN Corporation ("LRN"), on behalf of itself and certain of its directors, and by its undersigned counsel Reed Smith LLP, brings this action against Defendants Markel Insurance Company ("Markel") and Arch Insurance Company ("Arch"). In support thereof, LRN alleges the following:

## NATURE OF ACTION

1. This is an insurance coverage dispute between LRN and two of its Directors and Officers Liability ("D&O") insurers, Markel and Arch. Markel is LRN's primary insurer and Arch is an excess insurer.

2. LRN and three of its directors were named as defendants in a lawsuit, *Robert A. Davidow v. LRN Corporation, et al.,* Case No. 2019-0150-MTZ (Del. Ch. Ct) (the "*Davidow* Lawsuit"). LRN has been dismissed from the suit but it remains pending against the three directors.

3. The three directors are Insureds under the Policy that Markel sold to LRN ("the Policy").

4. Under the terms of the Policy and the law, Markel has a duty to defend the *Davidow* Lawsuit on behalf of its Insureds, but it has refused to do so.

5. Markel has refused to defend the *Davidow* Lawsuit based on an exclusion in its Policy, Exclusion IV.K. of Coverage Part A (the "Securities Transaction Exclusion"). That exclusion purportedly excludes coverage for claims arising out of the purchase or sale of debt or equity securities.

6. However, the Securities Transaction Exclusion contains an exception – known as a "carveout." The carveout applies if the claim is "based upon, arising out of or in any way involving" a "private-placement transaction." The Policy does not define "private-placement transaction."

7. The *Davidow* Lawsuit clearly in fact "arises out of" or "in any way involves" a private placement transaction, and therefore the carveout to the Securities Transaction Exclusion applies.

8. Accordingly, Markel has wrongfully refused to defend the *Davidow* Lawsuit.

9. Because Markel has refused to defend the *Davidow* Lawsuit, LRN has born the costs of defending the suit.

10. This action is for declaratory relief and breach of contract, arising out of Markel's wrongful refusal to defend the *Davidow* Lawsuit.

**PARTIES**

11. Plaintiff LRN is a privately-held company whose shares have never been listed on any public stock exchange.

12. LRN provides ethics and compliance solutions to businesses.

13. LRN is incorporated in the State of Delaware and has its principal place of business in the State of New York.

14. Upon information and belief, Defendant Markel is an insurance company incorporated in the State of Illinois and has its principal place of business in the Commonwealth of Virginia.

15. Upon, information and belief, Defendant Arch is an insurance company incorporated in the State of Missouri and has its principal place of business in the State of New Jersey.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district.

## BACKGROUND

### The Insurance Policies

18. In December 2018, in the middle of the merger transaction at issue here and with knowledge of the transaction, Markel sold LRN the Policy, covering the policy period December 17, 2018, to December 17, 2019, for a premium of $83,002. The Policy is attached as **Exhibit A** to this Complaint.

19. The Policy is a blended policy that contains several different kinds of coverage.

20. Coverage Part A of the Policy is Management Liability ("D&O") coverage for LRN's directors and officers, as well as LRN itself.

21. The Policy has a $5 million limit of liability, inclusive of defense costs.

22. The Policy is "claims-made" and obligates Markel to pay loss – including defense costs, settlements, and damages awards – resulting from a covered claim first made during the policy period.

23. Under Coverage Part A of the Policy and the law, Markel has a broad duty to defend any lawsuit or other Claim against its Insureds as long as there is the potential for coverage.

24. The Policy's Securities Transaction Exclusion, contained in Coverage Part A, provides in relevant part:

> The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:
>
> Based upon, arising out of or in any way involving: (i) the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities; or (ii) the actual or alleged violation of any federal, state, local or common or foreign law relating to debt or equity securities; provided this exclusion shall not apply to any **Claim**:
>
> 1. Based upon, arising out of or in any way involving the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities in a private-placement transaction exempt from registration under the Securities Act of 1933, as amended.

25. LRN also purchased a $5 million excess policy from Arch (the "Arch Policy"). The Arch Policy is a "follow form" policy, which means it generally adopts the terms and conditions of the primary policy issued by Markel, unless otherwise stated. The Arch Policy is attached as **Exhibit B** to this Complaint.

26. The Arch Policy adopts almost all of the terms and conditions of the primary policy, including the Securities Transaction Exclusion, including the private-placement carveout.

## The *Davidow* Lawsuit

27. The *Davidow* Lawsuit was filed in February 2019, purportedly on behalf of all former LRN stockholders who tendered their shares of common stock for $1.35 per share between October 6, 2017 and November 17, 2017 (the "Tender Offer"). The operative complaint in the *Davidow* Lawsuit is attached as **Exhibit C** to this Complaint.

28. After a partial dismissal, the suit is now proceeding in Delaware court against three defendants: LRN's Founder and Board Chairman, Dov Seidman, as well as two other directors.

29. The *Davidow* Lawsuit was filed shortly after LRN's acquisition by way of merger with Leeds Equity Partners, LLC ("Leeds") in December 2018 ("the Merger"), and the Merger is a significant element of the claim.

30. Plaintiffs in *Davidow* allege, among other things, that the Merger was the culmination of a scheme by the defendants to squeeze out minority LRN shareholders through, in part, a coercive tender offer (the "Tender Offer") at an unfairly low share price, in anticipation of later selling the company at a much higher price. The Merger, and its higher share price, is the basis of the plaintiffs' claim for damages.

31. These allegations are stated succinctly at paragraph 63 of the *Davidow* Lawsuit Complaint: "The Individual Defendants reaped the benefits of this coercive Tender Offer by tightening their grip of control over the Company and then consummating the Merger at $7.00 per share and obtaining millions of dollars of additional consideration at the expense of the Class." Other allegations regarding the purported scheme run throughout the *Davidow* Lawsuit.

32. The *Davidow* Lawsuit Complaint singles out defendant Dov Seidman as having been the biggest beneficiary of the alleged scheme. Paragraph 2 of the Complaint alleges:

> Seidman became LRN's controlling stockholder through the Tender Offer so he was the largest beneficiary of LRN's reduction in outstanding shares and pocketed millions of additional Merger consideration as a result. Seidman also used his control to approve the Merger through written consent. He further used his control to negotiate other private benefits for himself including an equity rollover, substantial influence over the surviving entity and a spinoff transaction of other LRN assets…

33. The Merger was consummated through a complex set of transactions. Leeds did not buy the LRN shares outright, but rather effected the Merger through a limited partnership named "Lion HoldCo" and several affiliated "Lion" entities, created for purposes of the Merger. The Merger involved the issuance of shares by Lion HoldCo, some of which went to Dov Seidman (through a trust) and some to Leeds. These shares were issued to Seidman and Leeds pursuant to a private placement exemption under applicable Federal securities laws. There was no SEC registration or public offering of any of the securities involved in the Merger. The relevant Merger documents are attached to this Complaint as **Exhibits D** through **H**.

34. Seidman received his shares through a "Rollover Agreement," which effectively allowed Seidman to contribute or "roll over" his LRN shares in exchange for the issuance to him of Lion HoldCo shares. This Rollover Agreement was a critical part of the Merger.

**LRN's Timely Tender and Markel's Wrongful Refusal to Defend the *Davidow* Lawsuit**

35. The *Davidow* Lawsuit was timely reported to Markel and Arch in early 2019, pursuant to the notice provisions of their policies, and acknowledged by Markel and Arch. There is no dispute that the tender was timely and that the Markel Policy and the Arch Policy were triggered by the notice.

36. For more than a year, Markel acted as though it would be defending the *Davidow* Lawsuit. For example, it negotiated with LRN and its chosen defense counsel over defense arrangements.

37. By letter dated April 27, 2020, more than a year after receiving notice of the *Davidow* Lawsuit (and weeks after the start of the COVID-19 pandemic), Markel informed LRN that it was denying coverage for the suit based on the Securities Transaction Exclusion of its Policy. Markel acknowledged that this exclusion contained a "private-placement transaction" carveout, but it asserted that the Tender Offer was not a private-placement transaction.

38. By letter dated June 12, 2020, LRN informed Markel that it had wrongfully denied coverage, and asked it to reverse its position. LRN noted that Markel had failed to address whether the Merger was a private-placement transaction. LRN pointed out that, pursuant to the express terms of Markel's Policy, the carveout to the Securities Transaction Exclusion applied as long as the Claim "arises out of" or "in any way involves" a private-placement transaction, and that the *Davidow* Lawsuit clearly arose out of and/or in any way involved the Merger.

39. For example, LRN wrote:

> While the Tender Offer is discussed in the *Davidow* Lawsuit, it is not the transaction that prompted the suit. The Tender Offer was completed in November 2017, and the lawsuit was not filed until late February 2019, well over a year later. What triggered the lawsuit was LRN's merger with Leeds Equity Partners ("the Merger") in late 2018, which is referenced repeatedly in the *Davidow* Lawsuit Complaint, beginning at paragraph 2. According to the Complaint, the Merger was the culmination of a scheme by the defendants to squeeze out minority LRN shareholders through a coercive tender offer at an unfairly low share price, in anticipation of later selling the company at a much higher price. Indeed, without the Merger, plaintiffs simply would have been in the position of having tendered their shares at a price they believed to be adequate at the time. The Merger, and its higher share price, is the basis of their claim for damages.

40. In its letter to Markel, LRN also demonstrated that the Merger in fact did qualify as a "private-placement transaction," because it involved the issuance and sale of nonregistered securities to select, qualified investors, rather than to the public.

41. For example, LRN wrote:

- 7 -

> The Merger was consummated through a complex set of transactions. Leeds did not buy the LRN shares outright, but rather effected the Merger through a limited partnership named "Lion HoldCo" and several affiliated "Lion" entities, created for purposes of the Merger. These entities were described in a Merger Notice provided to LRN shareholders on November 27, 2018 (attached hereto as Exhibit A), which is referenced in the *Davidow* Lawsuit Complaint at paragraphs 41, 42, and 45.
>
> \*\*\*
>
> The Merger also involved a separate but related agreement with Dov Seidman, which was called a "Rollover Agreement," (attached hereto as Exhibit B). This Rollover Agreement was a critical part of the Merger and in fact was referenced at the seventh whereas clause of the Merger Agreement as a "condition precedent." (The Merger Agreement is attached hereto as Exhibit C.)

42. With respect to Seidman's Rollover Agreement, LRN further wrote to Markel:

> The Rollover Agreement not only was a very important part of the Merger, it also is a very important part of the *Davidow* Lawsuit. The Complaint alleges that after Seidman gained control of LRN through a coercive and unfair Tender Offer, he then used that control to negotiate a merger transaction that unfairly benefited him personally. As summarized in paragraph 2 of the Complaint, this included the Rollover Agreement, as well as other "private benefits":
>
>> Seidman became LRN's controlling stockholder through the Tender Offer so he was the largest beneficiary of LRN's reduction in outstanding shares and pocketed millions of additional Merger consideration as a result. Seidman also used his control to approve the Merger through written consent. He further used his control to negotiate other private benefits for himself including an equity rollover, substantial influence over the surviving entity and a spinoff transaction of other LRN assets. The $255 million was over 36 times the $7 million post-money valuation at which most stockholders, predominately Seidman, originally invested in.
>
> As this reflects, Seidman's alleged procurement of unfair "private benefits" in connection with the Merger is a major theme of the *Davidow* Lawsuit.

43. To support its position, LRN provided Markel with relevant documents from the Merger, which were prepared by experienced securities lawyers. The documents indicate that the transaction was treated as a private placement transaction and not the public offering of securities.

44. Markel nevertheless chose to maintain its denial of coverage. By letter dated July 8, 2020, it stated that "even assuming that the Lion HoldCo Transaction or the Lion Co-Invest LLP Transaction (or both) was a private-placement transaction (which MIC disputes), **the carve-out to Exclusion IV.K. is not triggered by a private-placement transaction engaged in by a non-Insured**." (Emphasis added.) In fact, the carveout in the Securities Transaction Exclusion contains no such requirement.

45. As noted above, the Merger is at the heart of plaintiffs' damages case and is referenced repeatedly throughout the *Davidow* Lawsuit complaint. No reasonable insurance company evaluating the allegations in the underlying complaint would have turned a blind eye to these allegations and/or failed to consider their import in its coverage analysis, particularly as they concern the broad duty to defend. At the time of Markel's April 2020 denial, the entire country was in the throes of the COVID–19 pandemic. As was publicly reported Markel's finances were under severe stress. Upon information and belief, Markel's unreasonable denial of coverage was a result of its purported desire to conserve cash.

46. In a letter dated October 1, 2020, Markel doubled down on its unreasonable coverage denial, again disregarding the terms of its own Policy and offering a circular and result–oriented argument in an attempt to justify its denial.

47. Markel thus appears willfully to have misconstrued the terms of its own Policy in order to justify its denial of coverage for the *Davidow* Lawsuit. Markel also ignored well-settled principles of insurance policy construction, including that policy exclusions must be narrowly construed and any ambiguity must be construed in favor of coverage.

## **FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT**
**(Against both Defendants)**

48. Paragraphs 1 through 47 of this Complaint are incorporated into this Count as though fully set forth herein.

49. LRN has complied with all terms and conditions of the Policies with respect to its coverage for the losses incurred as a result of the *Davidow* Lawsuit. To the extent LRN has, for one reason or another, not complied with terms and/or conditions of the policies, Markel and Arch have waived compliance with such provisions or should be estopped from asserting them.

50. Under the Policy and the law, Markel has a broad duty to defend claims against its Insureds.

51. Markel wrongfully has refused to defend the *Davidow* Lawsuit.

52. Markel's wrongful refusal to defend will result in significant damages to LRN.

53. Arch has not disavowed Markel's wrongful position on coverage and stands to benefit from that position unless this Court grants the relief LRN requests.

54. An actual and justifiable controversy exists between LRN on the one hand and Markel and Arch on the other as to their respective rights and obligations, and whether LRN and its directors are entitled to coverage for the *Davidow* Lawsuit.

55. LRN seeks a declaratory judgment to resolve a present justiciable controversy among the parties regarding the coverage Markel and Arch owe for the *Davidow* Lawsuit.

56. LRN is entitled to a declaratory judgment by this Court that the Securities Transaction Exclusion does not apply to the *Davidow* Lawsuit and Markel has a duty to defend the *Davidow* Lawsuit. Declaratory relief from this Court will resolve outstanding issues between the parties regarding the obligations of Markel and Arch under the Policies.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201-02, LRN seeks subject in its favor as to Count I as follows:

- a) For a judgment declaring that the Policy's Securities Transaction Exclusion does not apply to the *Davidow* Lawsuit;
- b) For a judgment declaring that Markel has a duty to defend its Insureds in the *Davidow* Lawsuit;
- c) For a judgment declaring that Arch will have a duty to defend its Insureds in the *Davidow* Lawsuit upon the exhaustion of the Policy;
- d) For an award of prejudgment and post-judgment interest;
- e) For an award of LRN's attorneys' fees and costs in prosecuting this action;
- f) For an award of costs of court; and
- g) For an award of such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT
### (Against Markel)

57. Paragraphs 1 through 56 of this Complaint are incorporated into this Count as though fully set forth herein.

58. Markel was paid substantial premium in exchange for issuing the Policy.

59. The Policy is a valid contract.

60. Markel has breached that contract by refusing to defend its Insureds in the *Davidow* Lawsuit.

61. Markel has breached that contract by failing to comply with its duty of good faith and fair dealing.

62. Markel's breach of its contractual duties has caused damages to LRN.

63. These damages are foreseeable damages incurred by LRN as a direct result of Markel's wrongful conduct, which were contemplated by the parties when they executed the

Policy, and should be awarded so that LRN is adequately compensated for LRN's wrongful conduct.

64. Accordingly, Markel is liable to LRN for breaching the Policy.

WHEREFORE, LRN seeks subject in its favor as to Count II as follows:

a) For an award of all compensatory and consequential damages suffered by LRN caused by Markel's breaches of the Policy;

b) For an award of prejudgment and post-judgment interest;

c) For an award of LRN's attorneys' fees and costs in prosecuting this action;

d) For an award of costs of court; and

e) For an award of such other and further relief as the Court deems just and proper.

Respectfully submitted,

REED SMITH LLP

Dated: October 8, 2020          By:     s/John N. Ellison
John N. Ellison (JE3451)
599 Lexington Avenue
New York, NY 10022
T: (212) 521-5400
F: (212) 521-5450
jellison@reedsmith.com

David M. Halbreich (*pro hac vice* motion forthcoming)
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
T: (213) 457-8000
dhalbreich@reedsmith.com

Mark S. Hersh (*pro hac vice* motion forthcoming)
10 South Wacker Drive
Chicago, IL 60606
T: (312) 207-1000
mhersh@reedsmith.com

*Counsel for Plaintiff LRN Corporation*


- 13 -

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues properly so tried.

REED SMITH LLP

Dated:  October 8, 2020         By:      s/John N. Ellison
                                     John. Ellison

*Counsel for Plaintiff LRN Corporation*