

ReedSmith
Driving progress
through partnership

**John N. Ellison**
Direct Phone: +1 215 241 1210
Email: jellison@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 3, 2021

**VIA ECF**

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

**RE: LRN Corp. v. Markel Ins. Co., No. 1:20-cv-8431 (S.D.N.Y.)**

Dear Judge Gorenstein:

We write jointly on behalf of LRN Corporation ("LRN") and Markel Insurance Company ("MIC") (collectively, the "Parties"), pursuant to this Court's Order dated July 21, 2021 [Dkt. No. 51], directing the Parties to: (i) meet and confer on the issues raised by LRN's Motion to Compel Discovery [Dkt. No. 37]; and (ii) submit any remaining disputes in a joint letter to the Court. Consistent with the Order, the Parties met and conferred by telephone on July 27, 2021. Following those discussions, and follow up discussions by e-mail, there are two issues that presently remain in dispute.[1] The Parties respectfully submit those issues to the Court for resolution.

## I. Regulator Communications (Request No. 13)

In Request No. 13, LRN seeks all documents concerning any filing with any governmental agency with regard to the policy form(s) that make up the MIC Policy. (**Exhibit 1** at 7.) MIC declined to produce any documents in response to this request. (**Exhibit 2** at 11; **Exhibit 3** at 2.) Following the Parties' April 27th meet and confer call, LRN offered to limit its request to a five-year period beginning January 1, 2016 to present (**Exhibit 4** at 4.) Following the Parties' July 27th meet and confer call, and in a further effort to compromise, LRN offered to limit its request to MIC's communications with regulators regarding the disputed exclusion, Exclusion IV.K. and the exception thereto.

MIC continues to stand on three objections to this narrowed request: (1) such materials are not relevant because they constitute extrinsic evidence that is purportedly not discoverable; (2) the MIC Policy contains language, stating, in part, as follows: "forms . . . are exempt from the filing requirements of the New York Insurance Law and Regulations"; and (3) LRN's request is allegedly not proportional to the needs of the case. (**Exhibit 3** at 2; **Exhibit 5** at 3.) In an effort to compromise, on August 3, 2021 MIC offered to produce redacted filings with Delaware regulatory agencies that address Exclusion IV.K. and/or the Private Placement Exception. LRN did not accept this compromise.

[1] The Parties agree that all productions in this matter will be made pursuant to a stipulated Protective Order, which LRN has agreed to draft in the first instance.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

(a) LRN's Position

As a threshold matter, Markel is seeking to impose a narrower standard of what is relevant for discovery purposes than that imposed by Rule 26, which broadly permits discovery of any "nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). MIC's argument that communications with regulators are evidence extrinsic to the policy and therefore not discoverable is meritless. As the Second Circuit observed in *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, this Court "may accept any available extrinsic evidence to ascertain the meaning intended by the parties." 136 F.3d 82, 86 (2d Cir. 1998). Further, whether extrinsic evidence is *admissible* has no bearing on whether extrinsic evidence is *discoverable*, which it is in this case. *See Certain Underwriters at Lloyd's v. AMTRAK*, No. 14-CV 4717, 2016 U.S. Dist. LEXIS 64088, at *40-41 (E.D.N.Y. May 16, 2016). Instead, extrinsic evidence is discoverable "until there has been a finding that the policy is subject to only one interpretation." *Mariner's Cove Site B. Assocs. v. Travelers Indem. Co.*, No. 04Civ.1913(KMW)(RLE), 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005). And while Markel contends there have been no assertions by LRN that Exclusion IV.K. is ambiguous (which LRN contests), where, as here, there is a reasonable basis for a difference of opinion as to the meaning of a policy provision, an ambiguity exists. *See 10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 n.8 (2d Cir. 2010). In short, the standard Markel seeks to impose improperly curtails LRN's right under Rule 26 to materials that could shed light on the interpretation of Exclusion IV.K. and the Private-Placement Exception, whether extrinsic to the MIC Policy or not.

Information exchanged between an insurance company and its regulators relating to an exclusion is relevant and discoverable where, as here, the insurance company asserts that the exclusion applies to bar coverage. For example, such documents may show what MIC told regulators about how it intended Exclusion IV.K. and the Private-Placement Exception to apply. Such evidence would be directly relevant to LRN's claims for declaratory relief, breach of contract and breach of the covenant of good faith and fair dealing. *See AMTRAK*, 2016 U.S. Dist. LEXIS 64088, at *48 (ordering production of regulatory filing "related specifically to policy provisions excluding coverage for pollution-related injuries").

MIC's argument that the MIC Policy exempts the forms and rates from the filing requirements of New York insurance law and regulations omits the complete language of the provision. Specifically, the provision states as follows:

> These policy forms and the applicable rates are exempt from the filing requirements of the New York insurance law and regulations. ***However, the forms and rates must meet the minimum standards of the New York insurance law and regulations.***

(emphasis added). Thus, as evidenced by the MIC Policy's plain language, the documents sought by Request No. 13 are not precluded by operation of the MIC Policy language.

Consistent with its attempts to impose a narrower discovery standard than that required by the Federal Rules, MIC's next contention that Request No. 13 is not proportional also rings hollow. Over the course of the parties' meet and confer sessions, LRN has agreed to several refinements of Request No. 13 to ensure it is narrowly tailored to seek MIC's communications with regulators over the last five years relating to Exclusion IV.K., which is at the heart of the Parties' dispute. Further, proportionality requires that discovery not be unreasonably cumulative or duplicative, not be otherwise available, and that its

burdens not be outweighed by its likely benefits. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003). MIC cannot show that Request No. 13 is disproportionate here.

While LRN propounded several requests seeking interpretive materials that would elucidate the meaning of Exclusion IV.K. (*i.e.*, Request Nos. 10-12), MIC has represented that neither its underwriting guidelines nor any marketing, explanatory and/or educational materials maintained by the company show the intended meaning of Exclusion IV.K. or the Private-Placement exception. MIC has agreed to amend its discovery responses to reflect this by August 13, 2021. MIC's communications with regulators regarding Exclusion IV.K. may therefore be the one source of information that provides insight into MIC's intended application of the exclusion, and LRN has no access to these materials other than to obtain them from MIC. Additionally, given that the disputed coverage is directors and officers liability coverage pertaining to coverage for a company that is incorporated in Delaware, the representations made by MIC to Delaware regulators is certainly relevant to the Parties' dispute. *See RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 897 n.43 (Del. 2021) (under Delaware law, "a choice-of-law analysis for a D&O policy will most often reveal that the insured's state of incorporation has the most significant relationship to the D&O policy"). While MIC agreed on August 3, 2021 to produce redacted filings with Delaware regulators that address Exclusion IV.K. and the Private-Placement Exception, MIC's proposed limitation is too narrow, particularly where MIC contends no other materials reflecting the interpretation of the exclusion or exception exist. Accordingly, LRN requests an order requiring MIC to produce these documents promptly.

(b) MIC's Position

LRN has narrowed its request to "communications with regulators regarding the disputed exclusion" which LRN asserts are relevant to the "interpretation and application of the [MIC] Policy." However, the request still appears to require MIC to produce "all documents" concerning "any filing" with "any governmental agency" from all fifty states. Moreover, because Exclusion IV.K. is part of the policy form, the request still requires MIC to produce "any filing with any governmental agency with regard to the policy form(s) that make up the MIC Policy." This request is not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1); *see also Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 581234 (S.D.N.Y. Feb. 10, 2014) (noting that a request for "any and all documents" is "inherently overbroad"); *Certain Underwriters at Lloyd's v. National Railroad Passenger Corporation*, 318 F.R.D. 9 (E.D.N.Y. Nov. 30, 2016) (noting that "[i]n determining proportionality, courts balance the value of the requested discovery against the cost of its production) (internal citations omitted). Nor has LRN met its burden of proving that this information is relevant to this litigation, as there is no assertion by LRN that the policy is ambiguous.

In addition, the Policy specifically provides that the "forms . . . are exempt from the filing requirements of the New York Insurance Law and Regulations." Because this Policy is regulated by New York State, the only relevant forms would be those filings with New York. Here, no such filings exist.

LRN appears to be arguing that filings with Delaware regulatory agencies are relevant because LRN is incorporated in Delaware. In an effort to compromise, MIC is willing to produce redacted filings with Delaware regulatory agencies that address Exclusion IV.K. and/or the Private Placement Exception.



**II. <u>Other Policyholder Documents (Request No. 18)</u>**

In Request No. 18, LRN seeks other policyholder documents from the last five years related to MIC's interpretation of the same or substantially similar language to that contained in Exclusion IV.K. and/or the Private-Placement Exception, which MIC relied on to deny coverage for the *Davidow* Lawsuit. (**Exhibit 1** at 7-8.) MIC declined to produce these documents. (**Exhibit 2** at 12; **Exhibit 3** at 3.) Following the April 27th meet-and-confer call, in an effort to compromise, LRN offered to limit its Request for other policyholder materials to the last five claims on which MIC made a coverage determination or reserved its rights based on Exclusion IV.K. (**Exhibit 4** at 4.)

MIC has taken the position that it need not produce such documents because: (1) such documents are extrinsic to the policy and therefore purportedly not discoverable; (2) doing so would be unduly burdensome and (3) production of such documents could implicate confidentiality or privilege concerns. (**Exhibit 3** at 3; **Exhibit 5** at 5.) On the Parties' July 27th meet and confer call, MIC inquired whether it would be sufficient to produce publicly available documents related to three litigated matters involving Exclusion IV.K.: (1) *Colorado Boxed Beef Co., Inc. v. Evanston Ins. Co.*; (2) *Gleason v. Markel American Ins. Co.*; and (3) *Markel American Ins. Co. v. Verbeek* (the "Litigated Matters"). In an effort to compromise on this Request, on August 3, 2021 MIC offered to produce non-privileged documents and communications from the claim files for the Litigated Matters that address the Exclusion and Private Placement Exception. With respect to any publicly available documents filed by the litigants in connection with the Litigated Matters, MIC also agreed to assist LRN in obtaining any documents that it cannot access on its own. LRN did not accept this offer.

(a) <u>LRN's Position</u>

The requested documents are relevant and discoverable in this case because they relate to LRN's claims for breach of contract, breach of the covenant of good faith and fair dealing and declaratory relief. MIC's interpretation of the language in Exclusion IV.K. and/or the Private-Placement Exception in claims with other policyholders is directly relevant to show how MIC intended the exclusion and carevout to be interpreted at the time of the sale of the MIC Policy. As discussed above, New York courts routinely permit the discovery of evidence extrinsic to the contract in cases where there are disputes over the meaning of contract terms. Courts also routinely allow discovery of claims files for other claims that are similar to the claim being litigated and find that these files are relevant because they show how an insurance company interprets specific policy language. *See, e.g., Mariner's Cove*, 2005 WL 1075400, at *1 (allowing discovery of other insureds' claim documents); *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, No. 86 CIV. 9671, 1988 WL 96159, at *3 (S.D.N.Y. Sept. 6, 1988) (upholding magistrate's order compelling production of "other policyholder" documents); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 107 (D.N.J. 1990) (holding that information regarding other policyholders' claims was relevant for purposes of discovery because it might show that identical language has been afforded various interpretations by the insurance company).

While MIC contends Request No. 15 is unduly burdensome, it is MIC's responsibility to establish burden, which it has failed to do here. *See Culligan v. Yamaha Motor Corp.*, 110 F.R.D. 122, 126 (S.D.N.Y. 1986) (rejecting argument of burden where it was alleged with no support); *see also Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 91570 at *10 (S.D.N.Y. July 14, 2016) ("the party resisting discovery has the burden of showing undue burden or



expense"); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery") (internal citations omitted). Conversely, LRN has refined its Request to ensure it is very narrowly tailored, limiting it only to the most recent five claims implicating Exclusion IV.K. Ordering the production of other policyholder files is especially warranted here, where MIC contends no general materials (*i.e.*, marketing or company-issued guidance) interpreting Exclusion IV.K. or the Private-Placement Exception exist. The compromise proposed today by MIC to produce non-privileged documents from the claim files of the Litigated Matters involving Exclusion IV.K., regardless of whether there have been additional non-litigated claims since that time, is too narrow.

As to MIC's contentions that such materials could implicate confidentiality or privilege concerns, such concerns can be adequately addressed through agreement to a protective order, which the Parties are in the process of drafting, and the redaction/withholding of privileged materials. Accordingly, LRN requests an order requiring MIC to produce these documents promptly.

(b) MIC's Position

LRN has requested "other policyholder documents related to [MIC's] interpretation of the same or substantially similar language to Exclusion IV.K. and/or the Private Placement Exception." MIC initially objected to this Request because it was unduly burdensome and not proportional to the needs of the case. MIC understands that LRN has agreed to limit this request to the last five claims on which MIC made a coverage determination or reserved its rights based on Exclusion IV.K. However, locating these documents would require a wholesale review of every MIC claim file that might relate to the interpretation and application of Exclusion IV.K. and/or the Private Placement Exception. This is an overly burdensome task that is not proportional to the needs of the case. Moreover, documents from other policyholders may include confidential or privileged information that is not discoverable.

In an effort to compromise on this Request, MIC proposes that it produce non-privileged documents and communications from the claim files for the Litigated Matters that address the Exclusion and Private Placement Exception. With respect to any publicly available documents filed by the litigants in connection with the Litigated Matters, MIC will agree to assist LRN in obtaining any documents that it cannot access on its own.

## III. Issues on Which LRN Reserves Rights to Seek a Subsequent Motion to Compel

LRN reserves its rights to bring a subsequent motion to compel on three additional issues related to this discovery dispute: (1) underwriting documents; (2) claim documents, including any that MIC may be inappropriately withholding under the guise of privilege; and (3) communications regarding reserves.

In response to LRN's requests for claim[2] and underwriting[3] documents, MIC has now agreed to conduct keyword searches of relevant custodian e-mails. (**Exhibit 5** at 3-4). MIC has agreed to make a production

[2] MIC has agreed to conduct custodian searches in regards to Request Nos. 2-6, 14, and 16. In these requests, LRN seeks documents related to MIC's claim handling, including its complete claim file, communications regarding the Claim between MIC and others, and documents which MIC used to evaluate and/or relied upon in denying LRN's Claim, along with all documents generated in connection with MIC's hiring of any person or firm in response to the Claim.

[3] MIC has agreed to conduct custodian searches in regards to Request Nos. 2-6, 14, and 16. In these requests, LRN seeks documents related to MIC's claim handling, including its complete claim file, communications regarding the Claim between

of these documents by August 13, 2021, including an updated privilege log. To the extent MIC's production remains deficient after completing these custodian searches, LRN reserves its right to renew its Motion to Compel on these issues. Additionally, in response to Request No. 15, which seeks communications relating to the setting of reserves, MIC contends that no such communications exist, but has agreed that if it finds any such documents in the course of its review, it will either produce the documents or identify a basis for withholding them. To the extent MIC does find such documents but declines to produce them, LRN reserves the right to seek such communications in a subsequent motion.

**IV. Experts**

Each of the Parties is still evaluating whether it will use an expert.

Respectfully submitted,

John N. Ellison
Michael Delhagen

JNE:kak

cc: All Counsel (via ECF)

---

MIC and others, and documents which MIC used to evaluate and/or relied upon in denying LRN's Claim, along with all documents generated in connection with MIC's hiring of any person or firm in response to the Claim.