# EXHIBIT 3



Attorneys at Law
One Penn Plaza
Suite 4701
New York, New York 10119
(646) 833-0900
Fax (646) 833-0877
www.tresslerllp.com

Michael R. Delhagen
646-833-0880
mdelhagen@tresslerllp.com

April 27, 2021

**VIA EMAIL (jellison@reedsmith.com)**

John N. Ellison, Esq.
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650

      RE:      LRN Corp. v. Markel Ins. Co., No. 1:20-cv-8431 (S.D.N.Y.)
                 Tressler File No.: 10988-0237

Dear John:

On behalf of Markel Insurance Company ("MIC"), the following responds to your April 12, 2021 letter purporting to identify alleged "deficiencies" in MIC's responses and objections to LRN's First Request for the Production of Documents. MIC believes that it has adequately responded to LRN's requests and produced all responsive documents in its possession. In the interest of working cooperatively with LRN, we respond to the categories addressed in your letter below.

    **I.**    **The Specific Objections**

        a.    **Request Nos. 2-6, 14, 16**

LRN asserts that MIC "unilaterally limit[ed] its investigation and production of documents to those contained in its Claim File." MIC produced all responsive, non-privileged documents from its Claim File for this matter. You have inquired as to whether responsive documents may be found in locations other than MIC's Claim File and, as a result, may not have been produced. It does not appear that there are locations other than MIC's Claim File in which non-duplicative responsive documents might reasonably be located. Consequently, there are no additional responsive documents to be produced. Please note that the size of MIC's production bears no relation to MIC's good faith approach to its claims handling.

        b.    **Request Nos. 10-11**

LRN has requested documents that it claims are relevant to the MIC's "application and interpretation of Exclusion IV.K. and/or the Private Placement Exception." LRN has not established that extrinsic documents bearing on the meaning and interpretation of the Policy are relevant to this matter. *See W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d 157 (1990); *R/S Assoc. v. N.Y. Job Dev.,* 98 N.Y.2d 29 (2002) ("When interpreting an unambiguous contract term . . . [e]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face.").

Even if LRN could establish that extrinsic documents are relevant here and additional responsive documents exist, locating them would require a wholesale review of every MIC claim file that might relate to the interpretation and application of Exclusion IV.K. and/or the Private Placement Exception.  Claim files are not coded by coverage issue and, therefore, a manual review of every claim file involving a management liability policy would be required.  Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended in 2015, provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to its claim or defense and is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  LRN's Request Nos. 10 and 11 place no temporal limits on the information it seeks, which is a burdensome task to locate documents that bear little relevance to this case.  Therefore, MIC will not be producing additional documents responsive to these Requests.

   c. **Request Nos. 7-8**

MIC has not withheld any underwriting documents from the Underwriting File on the basis of privilege and has produced the entire Underwriting File in this matter.  MIC believes that the Underwriting File sufficiently responds to LRN's discovery requests.

   d. **Request No. 12**

LRN has requested documents that it claims are relevant to "the proper interpretation and application of the [MIC] Policy, including Exclusion IV.K. and/or the Private Placement Exception."  LRN has not established that extrinsic documents bearing on the meaning and interpretation of the Policy are relevant to this matter.  *See W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d 157 (1990); *R/S Assoc. v. N.Y. Job Dev.,* 98 N.Y.2d 29 (2002) ("When interpreting an unambiguous contract term . . . [e]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face."). Additionally, because LRN's Request No. 12 places no temporal limits on the information it seeks, it is an overly burdensome task that is not proportional to the needs of the case.  Nevertheless, MIC will search for any underwriting guidelines in effect in 2018 and will determine whether they may be relevant and whether they were relied upon in the underwriting of this account.

   e. **Request No. 13**

LRN has requested filings with "any governmental agency with regard to the policy form(s) that make up the [MIC] Policy" . . . which LRN asserts are relevant to the "interpretation and application of the [MIC] Policy."  LRN has not established that extrinsic documents bearing on the meaning and interpretation of the Policy are relevant to this matter.  *See W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d 157 (1990); *R/S Assoc. v. N.Y. Job Dev.,* 98 N.Y.2d 29 (2002) ("When interpreting an unambiguous contract term . . . [e]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face.").  Because LRN's Request No. 13 places no temporal limits on the information it seeks, it is an overly burdensome task that is not proportional to the needs of the case.  The Policy specifically provides that the "forms . . . are exempt from the filing requirements of the New York Insurance Law and Regulations."

John N. Ellison, Esq.
April 27, 2021
Page 3 of 4

      **f.   Request No. 15**

LRN asserts that it is entitled to MIC's reserves or accounting treatment for the **Claim**. However, reserve information is not discoverable as it has no probative value. Courts in New York have found that reserve information is not relevant because an "insurer's assessment . . . of exposure to liability in this . . . case[] has nothing to do with whether here there is liability." *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 1992 WL 75097 (S.D.N.Y. Mar. 31, 1992); *see Stonewall Ins. Co. v. National Gypsum Co. et al.*, 86 Civ. 9671 (S.D.N.Y. Sept. 6, 1988) (denying plaintiff's request for documented reserve information but allowing plaintiff to explore the topic through depositions); *In re Residential Capital, LLC*, 575 B.R. 29 (S.D.N.Y. July 14, 2017) (concluding that neither the existence nor amount of a reserve fund has any bearing on the legal question of coverage, which is determined by the language of the insurance contract) (internal citations omitted).

In addition, LRN's Request No. 15 places no temporal limits on the information it seeks and seeks reserve information about other matters, which have no relevance to this matter. Because reserve information is not relevant and because these requests are not proportional to the needs of this case, MIC will not be producing this information.

      **g.   Request No. 18**

LRN has requested "other policyholder documents related to [MIC's] interpretation of the same or substantially similar language to Exclusion IV.K and/or the Private Placement Exception." LRN has not established that extrinsic documents bearing on the meaning and interpretation of the Policy are relevant to this matter. *See W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d 157 (1990); *R/S Assoc. v. N.Y. Job Dev.,* 98 N.Y.2d 29 (2002) ("When interpreting an unambiguous contract term . . . [e]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face."). Even if responsive documents exist, locating them would require a wholesale review of every MIC claim file that might relate to the interpretation and application of Exclusion IV.K. and/or the Private Placement Exception. This is an overly burdensome task that is not proportional to the needs of the case. Moreover, documents from other policyholders may include confidential or privileged information that is not discoverable. MIC will not be producing additional documents responsive to this Request.

    **II.   The General Objections**

      **a.   General Objection No. 4**

LRN has not established that extrinsic documents bearing on the meaning and interpretation of the Policy are relevant to this matter. *See W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d 157 (1990); *R/S Assoc. v. N.Y. Job Dev.,* 98 N.Y.2d 29 (2002) ("When interpreting an unambiguous contract term . . . [e]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face."). MIC therefore reasserts General Objection No. 4.

      **a.   General Objection No. 8**

Pursuant to MIC's Responses and Objections to LRN's First Request for the Production of Documents, dated March 2, 2021, MIC specifically provided that it would not create a privilege log for any information or documents post-dating the anticipation of litigation date, all of which

John N. Ellison, Esq.
April 27, 2021
Page 4 of 4

are subject to the work-product doctrine and/or the attorney-client privilege. MIC is under no obligation to produce documents that were prepared in anticipation of litigation. CPLR 3101(d). *see Landmark Ins. Co. v. Beau Rivage Restaurant, Inc.*, 509 N.Y.S.2d 819 (2d Dep't 1989 (holding that the portion of insurer's claim-file that was prepared after a firm decision to disclaim coverage was exempt from discovery as material prepared for litigation); *see also Fields v. First Liberty Ins. Corp.* 2006 WL 3230292, at *1, 3 (S.D.N.Y. Nov. 7, 2006) (holding that when attorney-client communications relate to legal advice, "they do not lose the protection of the attorney-client privilege simply because they involve an insurance claim."). In this matter, MIC anticipated litigation beginning on March 11, 2020, the date of Alex Ehmke's follow-up e-mail to MIC providing copies of the Merger Agreement and asserting that the Tender Offer was a private placement. As a result, MIC redacted claim notes on or after March 11, 2020 and did not include them in the log previously provided. MIC therefore reasserts General Objection No. 8.

   We look forward to speaking today to meet and confer and hopefully come to a compromise on the above issues in an effort to avoid motion practice.

                   Very truly yours,

                   Michael R. Delhagen