# EXHIBIT 4



**David M. Halbreich**
Direct Phone:  +1 213 457 8033
Email:  dhalbreich@reedsmith.com

Reed Smith LLP
355 South Grand Ave
Los Angeles, CA 90071
+1 213 457 8000
Fax +1 213 457 8080
reedsmith.com

May 3, 2021

**Via E-mail** (mdelhagen@tresslerllp.com; jzaluski@tresslerllp.com)

Michael Delhagen, Esq.
Jennifer Zaluski, Esq.
Tressler LLP
One Penn Plaza, Suite 4701
New York, New York 10119

RE:  <u>**LRN Corp. v. Markel Ins. Co.**</u>, No. 1:20-cv-8431 (S.D.N.Y.)

Dear Mr. Delhagen:

I am writing to follow-up on our meet and confer call from Tuesday, April 27, 2021, regarding deficiencies in the responses and objections of Markel Insurance Company ("Markel") to the First Set of Document Requests of LRN Corp. ("LRN").  This correspondence also responds to Markel's April 27, 2021 letter (the "April 27 Letter") responding to LRN's April 12, 2021 letter regarding deficiencies in Markel's production, and memorializes the parties' meet and confer discussion from that same day.

**I.  Specific Requests**

**a.  Deadlines for Responses and Production**

Given the impending discovery deadline, we ask that Markel identify no later than **May 7, 2021** those Requests where Markel intends to supplement its responses and/or production as well as confirm, on that date, when any anticipated production will be received. We ask that all supplemental production be made by or before **May 21, 2021**.

**b.  Requests Nos. 2-6, 14, 16:  Claim Documents**

While your April 27 Letter states that Markel does not believe there are locations other than the claim file where non-duplicative materials responsive to the above-requests for claim documents would be stored, on the parties' call of that same day you confirmed that your client will undertake a broader search to identify responsive documents and communications relating to these Requests.  As discussed, in undertaking this investigation, LRN expects that Markel will identify custodians who are reasonably likely to have documents and communications related to LRN's claim for coverage for the *Davidow* Lawsuit (for example, Anne Ray), and then apply appropriate search terms to locate responsive documents and communications.

To be clear, based on LRN's review of the claim file, there are either claim documents missing from Markel's production or Markel failed to conduct an adequate investigation of the claim.  While Markel's

Michael Delhagen, Esq.
May 3, 2021
Page 2



production was over 1,000 pages, the documents reflecting Markel's actual claims handling was significantly smaller.  Moreover, the production is completely devoid of any substantive coverage analysis undertaken by Markel nor does the production evidence any attempt by Markel to apply the allegations in the *Davidow* Complaint to the terms of the Markel Policy. Instead, Markel exhibited a singular focus on the applicable attorneys' rates to the exclusion of all else, including the principal task at hand: a good faith investigation of LRN's claim and, thereafter, a timely coverage determination.

### c.  Request Nos. 10-11:  Interpretive Materials Related to the Markel Policy

In your April 27 Letter, you take the position that interpretive materials relevant to Markel's interpretation and application of Exclusion IV.K. and the Private-Placement Exception in the Markel Policy, which are the very essence of the parties' coverage dispute in this litigation, need not be produced because extrinsic evidence is purportedly not relevant to the interpretation of the Markel Policy. In support of this erroneous position, Markel relies upon two cases, neither of which bear relevance here.

The first case pertains to whether extrinsic evidence, in ruling on a motion for summary judgment, should have been considered when interpreting an unambiguous cancelation clause in a contract for real property. *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157 (N.Y. 1990).  As an initial matter, the case has no bearing on whether extrinsic evidence is discoverable.  Instead, *W.W.W. Assocs.* focuses solely upon whether extrinsic evidence may be relied upon in the context of a dispositive motion.  Further, the clause at issue in *W.W.W. Assocs.* is of a wholly different type than those at issue here, *i.e.*, a commonplace contractual clause versus a niche securities exclusion and exception in a D&O insurance policy. Similarly, the second case cited by Markel also relates to whether extrinsic evidence should be considered in ruling on a dispositive motion in a non-insurance context.  *R/S Assocs. v. N.Y. Job Dev. Auth.*, 98 N.Y.2d 29 (N.Y. 2002).  There, the court was tasked with determining the meaning of the commonplace term "effective cost of funds" in a loan agreement. *Id*.  Again, neither case addressed whether extrinsic evidence is normally discoverable.  As pointed out in LRN's April 12, 2021 letter, this information is discoverable "until there has been a finding that the policy is subject to only one interpretation." *Mariner's Cove Site B. Assoc. v. Travelers Indem. Co.*, No. 04Civ.1913(KMW)(RLE), 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005). Here, it goes without saying that there has been no finding made that the Markel Policy is subject to only one interpretation.

Next, LRN disagrees with the position taken by Markel in the April 27 Letter that these Requests would require a "wholesale review of every MIC claim file that might relate to Exclusion IV.K. and/or the Private-Placement Exception."  As phrased, the Requests are ***not*** seeking other policyholder documents but, as evidenced by their plain language, are seeking more general interpretative materials, *e.g.*, underwriting manuals, marketing materials, etc.  This is underscored by the fact that LRN served a separate request, Request No. 18, addressed below, that pertains to other policyholder claims.

In sum, while LRN maintains that its original Requests are reasonable as phrased, LRN is nevertheless amenable to limiting the scope of the Requests in hopes that the parties may reach an agreement. As to both Requests, LRN is agreeable to limiting the relevant time period to January 1, 2016 to the present and, as noted above, confirms that neither Request seeks other policyholder documents.  Please let us

Michael Delhagen, Esq.
May 3, 2021
Page 3



know whether Markel will agree to search for and produce responsive documents to these Requests in light of the proposed limitations.

Should Markel reject the proposed limitations to these Requests, LRN reserves the right to move to compel responses to the Requests as originally propounded.

### d.   Request Nos. 7-8:  Documents Related to the Underwriting of the Markel Policy

As discussed on the parties' April 27 meet and confer, you will confer with your client and let us know whether Markel is willing to conduct a custodian search using search terms to identify materials related to the underwriting and placement of the Markel Policy that have not been produced.  To be clear, LRN expects Markel to produce any documents pertaining to the placement and underwriting of the Markel Policy, whether stored in Markel's underwriting file or elsewhere.

### e.   Request No. 12:  Underwriting Manuals Pertaining to the Markel Policy/D&O Policies

Preliminarily, LRN disputes Markel's position in the April 27, 2021 Letter that LRN must first establish that extrinsic evidence "bear[s] on the meaning of and interpretation of the Policy" to be entitled to discovery on the same. As discussed above, in regards to Request Nos. 10-11, New York law states the opposite and allows discovery until it has been established that the policy is subject to only one interpretation. *Mariner's Cove Site B. Assoc.*, 2005 WL 1075400, at *1. Here, no such finding has been made regarding the Markel Policy.

Further, while LRN is willing to limit the scope of the Request, Markel's current offer to limit its search to "all [relevant] underwriting guidelines in effect in 2018" that "were relied upon in the underwriting of this account" is too narrow as phrased. Thus, LRN offers to limit the Request to all Underwriting Manuals[1] that relate to the Markel Policy, *i.e.*, those Underwriting Manuals that govern the Markel Policy.  Moreover, Markel's contention that the Request "places no temporal limits on the information it seeks," is incorrect as the Request sought only those Underwriting Manuals generated or effective from 2008 to the present.

Should Markel reject the proposed limitations to this Request, LRN reserves the right to move to compel a response to the Request as originally propounded.

### f.   Request No. 13: Filings with Government Agencies Related to the Markel Policy

You are correct, as noted in your April 27, 2021 Letter, that the Markel Policy "forms and the applicable rates are exempt from the filing requirements of the New York insurance law and regulations." However, the subsequent sentence in the Markel Policy, which was omitted from the April 27, 2021 Letter, tellingly states, the Markel Policy "forms and rates ***must meet*** the minimum standards of the New York insurance law and regulations." (emphasis added.)  Thus, as evidenced by the Markel Policy's

---

[1] The term "Underwriting Manuals" shall mean, without limitation, instructional materials, guidelines, procedures or other documents used for guidance, reference or training by persons involved in the underwriting, drafting, generation or sale of directors & officers insurance policies or reinsurance policies or agreements.

Michael Delhagen, Esq.
May 3, 2021
Page 4



plain language, the documents sought by Request No. 13 are not precluded by operation of the Markel Policy language. In short, LRN is entitled to documents relevant to the "genesis of the applicable provision," *i.e.*, Exclusion IV.K. and/or the Private Placement Exemption. *Mariner's Cove Site B Associates*, 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005).

Although LRN maintains it is entitled to this information without limitation, LRN is willing to limit the relevant period to January 1, 2016 to the present (a five-year widow of time) and hopes this resolves all remaining concerns Markel has in with respect to this Request.

Should Markel reject the proposed limitations to this Request, LRN reserves the right to move to compel a response to the Request as originally propounded.

### g. Request No. 15: Communications Related to Reserves

As discussed, LRN is not seeking information identifying the amount of reserves set by Markel in relation to LRN's claim for coverage for the *Davidow* Lawsuit. Rather, LRN seeks all communications relating to the setting of reserves. Please confirm that no communications relating to reserves were withheld and/or redacted, including as to Bates No. MIC0000005, and to the extent any communications were withheld and/or redacted, please produce the same.

If Markel is not in agreement to produce these communications, please let us know so that we may determine appropriate next steps.

### h. Request No. 18: Other Policyholder Documents

While LRN maintains that this Request was reasonable as phrased (seeking other policyholder documents from only the last five years), LRN nevertheless agrees to limit Request No. 18 to the last five claims preceding LRN's claim for coverage for the *Davidow* Lawsuit wherein Markel either made a coverage determination and/or reserved its rights based on Exclusion IV.K. and/or the Private Placement Exception in policies issued to any policyholder other than LRN. Documents responsive to this request shall include, but are in way limited to, reservations of rights letters and/or coverage denial letters issued by Markel to any of its policyholders, as well as all motions, legal briefs, legal memoranda, order, awards, and/or rulings (whether issued in connection with a civil lawsuit or arbitration). As always, names and other confidential information identifying Markel's other policyholders may be redacted.

Should Markel reject the proposed limitations to this Request, LRN reserves the right to move to compel a response to the Request as originally propounded.

### II. Conclusion

In addition to the issues raised in this letter, LRN reserves the right to raise additional deficiencies with Markel's responses and production at a later date. As always, LRN reserves all of its rights under the Markel Policy, at law or otherwise.



Michael Delhagen, Esq.
May 3, 2021
Page 5


Should Markel wish to discuss these issues further, please let us know and we are happy to set up another meet and confer call.

Very truly yours,

David M. Halbreich


cc:   Michael Goodstein (mgoodstein@baileycav.com)
      Peter Scoolidge, (peter@sprfllp.com)
      John Ellison
      Lisa Szymanski
      Margaret C. McDonald