

Attorneys at Law
One Penn Plaza
Suite 4701
New York, New York 10119
(646) 833-0900
Fax (646) 833-0877
www.tresslerllp.com

Michael R. Delhagen
646-833-0880
mdelhagen@tresslerllp.com

October 4, 2021

**VIA ECF**

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

       RE:    *LRN Corp. v. Markel Ins. Co, et al.*, Case No. 1:20-cv-8431 (S.D.N.Y.)

Dear Judge Gorenstein:

      This firm represents Defendant Markel Insurance Company ("MIC") in the above-referenced action. The purpose of this letter is to request a pre-motion conference pursuant to Rule 2.A. of Your Honor's Individual Practices and Local Rule 37.2,[1] on MIC's entitlement to a protective order under Federal Rules of Civil Procedure 26(c) and 45(d)(3), to quash a notice of deposition served on Anthony F. Markel on July 9, 2021, by Plaintiff LRN Corporation ("LRN").[2] A copy of the notice of deposition is attached hereto as Exhibit A. The bases for MIC's Motion to Quash the Notice of Deposition are set forth below.

      This action involves an insurance coverage dispute in which LRN seeks coverage for an underlying lawsuit captioned *Robert A. Davidow v. LRN Corporation, et al.*, Case No. 2019-0150-MTZ filed in the Delaware Chancery Court (the "Underlying Action") under For Profit Management Liability Policy No. MKLC1MML000060 (the "Policy") issued by MIC to LRN. The Underlying Action arises out of a self-tender offer by LRN to acquire shares of LRN's common stock for $1.35 per share (the "Tender Offer"). The underlying plaintiff alleges that the

---

[1] The parties met and conferred by telephone on August 23, 2021 at 1:30pm for approximately 10 minutes. The following people participated in that call: (1) Dan Formeller (Tressler LLP on behalf of MIC); (2) Jennifer Zaluski (Tressler LLP on behalf of MIC); (3) David Halbreich (Reed Smith on behalf of LRN); (4) Lisa Szymanski (Reed Smith on behalf of LRN); (5) Margaret McDonald (Reed Smith on behalf of LRN). MIC's counsel stated its position that there was no justification for Mr. Markel's deposition because Mr. Markel is an "apex" witness whose testimony is not relevant to LRN's claims in this lawsuit. Counsel for LRN advised that their client was insistent on taking Mr. Markel's deposition, but that they would again speak with him and revert back on whether LRN would agree to withdraw the deposition notice. On August 26, 2021, counsel for LRN e-mailed counsel for MIC and advised that it would not be withdrawing the deposition notice of Mr. Markel because they believe Mr. Markel participated in "principal-to-principal" negotiations to resolve the **Claim**. The dispute could not be resolved and MIC advised that it would be moving forward with its motion to quash.

[2] The notice of deposition of Mr. Markel was served pursuant to Federal Rules of Civil Procedure Rule 30. Rule 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court[.] . . .The deponent's attendance may be compelled by subpoena under Rule 45." Mr. Markel's notice of deposition was not accompanied with a subpoena. We respectfully submit that, in addition to the protections afforded under Rule 26, Mr. Markel is entitled to the protections afforded under Rule 45.

The Honorable Judge Gorenstein
October 4, 2021
Page 2 of 5

Tender Offer was "coercive and part of a scheme orchestrated by...LRN's founder...to acquire control of the Company and reduce the outstanding shares at an unfair price before he completed an undisclosed sales process that was underway when the Tender Offer was commenced."

After conducting its coverage evaluation, MIC disclaimed coverage for the Underlying Action based on Exclusion IV.K. of Coverage Part A of the Policy ("Exclusion IV.K."), which bars coverage, in relevant part, for **Claims**[3] "based upon, arising out of or in any way involving…the actual, alleged, or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities[.]"[4] The parties dispute whether LRN has met its burden of establishing that a carve-out to Exclusion IV.K. is implicated by certain transactions at issue in the Underlying Action, which LRN asserts brings the matter within coverage.

On July 9, 2021, in spite of Your Honor's June 3, 2021 Order *staying discovery in this matter* pending the parties' continued efforts to mediate, LRN inappropriately served a notice to take the oral deposition of Anthony Markel, the Vice Chairman and member of the Board of Directors of Markel Corporation. Markel Corporation – the parent company of Defendant MIC – is a publicly traded, Fortune 500 company with over 17,000 employees, operating 16 businesses, with 27 directly owned companies, through 80 offices in 18 different countries. Mr. Markel has been semi-retired since 2009, is not involved in the day-to-day operations of Markel Corporation, and has no direct involvement in the business of MIC. Upon information and belief, LRN seeks Mr. Markel's testimony because after MIC denied coverage for the Underlying Action and three (3) days before it commenced the instant action, LRN and its broker Lockton Financial Services ("Lockton") chose to cease communicating with representatives of Markel Service, Incorporated ("MSI"), which is the underwriting and claim service manager for MIC and whose employees are solely responsible for all underwriting and coverage decisions relevant in the Underlying Action. Instead, Lockton and LRN contacted Mr. Markel in a final and failed attempt to alter the coverage decisions made by the claim professionals at MSI. Specifically, Lockton emailed Mr. Markel on October 5, 2020 regarding MIC's denial of coverage, and a call was subsequently scheduled for October 14, 2020. MIC understands that there was only one phone call with Mr. Markel initiated by Lockton and Mr. Jeffrey Leeds, the CEO of Leeds Equity.[5] Mr. Leeds also briefly exchanged emails with Mr. Markel in December 2020, after LRN commenced the instant action and after further discussions between MSI and LRN failed to provide the resolution sought by LRN.

As discussed below, MIC now seeks an order quashing the deposition of Mr. Markel because: (1) Mr. Markel does not have personal or unique knowledge of the facts relating to this action; (2) Mr. Markel has no authority to make binding representations or decisions on behalf of MIC; (3) there are other witnesses that possess relevant information; (4) the deposition would be unduly burdensome and is designed merely to harass Mr. Markel and MIC; and (5) any communications between Mr. Markel and Mr. Leeds address only non-admissible, settlement communications. For these reasons, MIC requests that the Court enter a protective order relieving Mr. Markel from complying with the July 9, 2021 Notice of Deposition.

In general, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party. Fed. R. Civ. P. 26(b)(1). "Nonetheless, a court has discretion to circumscribe discovery even of relevant evidence by making 'any order which justice requires to

---

[3] Bolded terms are as defined in the Policy.
[4] At the center of the parties' dispute is whether LRN has met its burden of establishing that the Underlying Action involves "the purchase or sale of securities in a private-placement transaction exempt from registration under the Securities Act of 1933," implicating a carve-out to Exclusion IV.K.
[5] MIC understands that Leeds Equity is a private equity firm that acquired LRN during a December 2018 merger.

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003) (Gorenstein, M.J.) (quoting Fed.R.Civ.P. 26(c)); *see Treppel v. Biovail Corp.*, No. 03 CIV. 3002 PKL JCF, 2006 WL 468314 (S.D.N.Y. Feb. 28, 2006) (Rule 26(b)(2) authorizes courts to "restrict discovery that is unreasonably burdensome."); *see also Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 82-83 (S.D.N.Y. 2002) (Gorenstein, M.J.) ( "[D]iscovery is not boundless, and a court may place limits on discovery demands that are unreasonably cumulative or duplicative.") (citations omitted)). Fed.R.Civ.P. 45(c) "provides additional protection for non-parties subject to a subpoena by mandating that a court "quash or modify the subpoena if it ... subjects [the] person to undue burden." *Jones*, 219 F.R.D. at 74 (citing Fed.R.Civ.P. 45(c)(3)(A)(iv)). In making this determination, a court must limit a party's discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).[6]

Fed. R. Civ. P. 26(b)(2). It is thus well-settled that "judges may prevent [a] proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship." *Jones*, 219 F.R.D. at 74–75 (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 70). The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant. *Id.*

Depositions of senior corporate executives – or "apex" witnesses – are disfavored "unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action." *In re Ski Train Fire of November 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (suggesting instead that a set of "focused interrogatories" might better address the sought discovery issue). When considering whether to allow the deposition of a corporate executive, courts consider: (1) "the likelihood that the individual possesses relevant knowledge" and (2) "whether another source could provide identical information." *Treppel,* 2006 WL 468314 at *2. Where the apex witness has limited knowledge on the subject matter of an action and whose deposition is sought for the purpose of harassment, this Court has recognized that "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation. Accordingly, where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive." *Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92 CIV. 4927 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993).

District Courts in the Southern District have granted protective orders for and/or deferred depositions of high-level executives "where a party seeking to take a deposition has not yet attempted to obtain information from lower level executives…where high-level executives plainly had no knowledge of the facts…or where the deposition was solely sought to harass the executive." *Gen. Star Indem. Co.* 210 F.R.D. at 82-83 (S.D.N.Y. 2002) (Gorenstein, M.J.) (citations omitted));

---

[6] Rule 26(b)(1) requires the court to consider the "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*see, e.g.*, *Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06 CIV. 5474 (JGK), 2008 WL 857492 (S.D.N.Y. Mar. 31, 2008) (protective order appropriate where the executive had no decision-making power over plaintiff's employment, was not copied on emails concerning plaintiff's termination, was informed about the termination after it took place, and any personal knowledge was learned through company counsel); *Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) (denying motion to compel deposition of bank general counsel where plaintiffs failed to demonstrate a need for his testimony, likelihood of harassment was significant, and plaintiffs refused to depose official with personal knowledge of the facts at issue); *Treppel,* 2006 WL 468314 at *2 (protective order precluding deposition of corporate executives granted where plaintiff had "not explained why the noticed individuals are believed to have personal knowledge of the underlying events, nor why that knowledge is believed to be unique."); *Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92 CIV. 4927 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (deferring depositions of subpoenaed executives "until it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases").

Mr. Markel's testimony is neither relevant nor necessary to the issues in this coverage action, and the deposition of a senior corporate executive of MIC's parent company is clearly designed to harass and create an undue burden on Mr. Markel and MIC. As the semi-retired Vice Chairman and member of the Board of Directors at Markel Corporation, Mr. Markel's job is to oversee the operation of a public company with over 17,000 employees, operating 16 diverse types of businesses, with 27 directly owned companies, through 80 offices in 18 different countries. Mr. Markel is not involved in the day-to-day operations of MIC or any other subsidiaries. He is not involved in any decisions concerning coverage under any given policy and has no authority to make representations with respect to coverage on behalf of MIC. He was not involved in the underwriting or claims handling for LRN, or any other insured, and did not participate in the coverage evaluation of the Underlying Action. Mr. Markel's involvement in this case is marginal at best, and is the result of inappropriate communications initiated by the broker, at the direction of LRN, in a final "Hail-Mary" attempt to have MIC's coverage determination revisited. As a courtesy, Mr. Markel spoke with the broker and Mr. Leeds, describing the claims professionals as "the best and the brightest that we have in that field." MSI thereafter engaged in further discussions with LRN in a good faith effort to reach a compromise, but those efforts were ultimately unsuccessful. Mr. Markel was not directly involved in these discussions. Even after these discussions, Mr. Leeds reached out again to Mr. Markel expressing his dissatisfaction, but Mr. Markel deferred to MIC's "informed legal decisions." These limited communications are insufficient to establish that Mr. Markel's testimony is relevant or necessary, or that he has any personal knowledge regarding the underwriting of the Policy or the claim evaluation relevant to the Underlying Action.

In any event, any conversation concerning coverage that may have taken place between Mr. Markel and the broker and/or LRN are neither relevant nor discoverable because Mr. Markel has no authority to make representations that are binding on MIC. Mr. Markel is not on the Board of Directors for either MIC or MSI. In other words, even if Mr. Markel made statements about his interpretation of the Policy and Exclusion IV.K. – he did not – those statements are not relevant to this litigation because he has no authority to weigh in on matters related to MIC's claims handling, policy interpretation, or its general business practices.

Moreover, any knowledge Mr. Markel has of the underlying facts of this litigation are second-hand from those directly involved in the underwriting of the Policy and claims handling at MIC, Markel West, and MSI. It is thus more appropriate for LRN to obtain the information it

seeks in discovery from the individuals directly involved that possess knowledge of the relevant facts and issues of this case. MIC has identified the Executive Claims Specialist at MSI who directly handled the **Claim** and the underwriter of the Policy as potential witnesses. LRN has also noticed the deposition of the Managing Director of Underwriting at MSI. These witnesses have direct knowledge concerning the documents and subject matter of the coverage issues giving rise to this dispute. Mr. Markel does not. There is absolutely no need to depose Mr. Markel – an apex witness of MIC's parent company – with marginal second-hand knowledge of the facts at issue who was not directly involved in the underwriting of the Policy or claims handling addressing the Underlying Action.[7]

We also note that Mr. Markel's brief communications with the broker and LRN took place after MIC's coverage determination had already been made. Any communications LRN had with Mr. Markel in an attempt to resolve the coverage dispute constitutes conduct or statements made during compromise negotiations and are thus inadmissible pursuant to Fed. R. Civ. Proc. 408(a)(2).

It is clear that LRN's only purpose for seeking Mr. Markel's testimony is to harass, burden and annoy a corporate executive with no connection to this case.[8] Mr. Markel's insignificant involvement here is one of LRN's own devise, after it chose to cease communicating with MSI representatives that were solely responsible for all coverage decisions relevant in the Underlying Action in an attempt to seek sympathies from the parent company's corporate executive. LRN's efforts to further harass Mr. Markel by taking his testimony should not be allowed. Such litigation tactics create an undue burden for Mr. Markel and MIC and are a waste of the Court's time and judicial resources.

For the foregoing reasons, MIC requests a conference before the Court and submits that Mr. Markel should be entitled to a protective order relieving him of complying with LRN's notice of deposition.

Respectfully

Michael R. Delhagen (MD 5555)
Jennifer Zaluski (4867776)

cc:   All Counsel of record (via ECF)

---

[7] MIC further submits that to the extent LRN seeks to take the deposition of Mr. Markel before deposing other "lower level" executives, LRN should not be allowed to do so before establishing that Mr. Markel has unique information about this case that cannot be obtained from other lower-ranking executives. *See, e.g.*, *Treppel*, 2006 WL 468314, at *3 (deposition of corporate executive not permitted where plaintiff "has made no attempt to depose any lower level executives, and [where] document discovery had not been completed.")

[8] For example, LRN insists on taking Mr. Markel's deposition in person, rather than virtually. Mr. Markel lives in Atlanta, Georgia, and would require either Mr. Markel to travel to New York or the parties' counsel to travel to Georgia, and incur the cost of travel (during a pandemic) in order to take the deposition.